[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1151 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1152 
Columbus Fletcher Primm, Jr. was indicted for rape in the first degree in violation of § 13A-6-61, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment" and the trial judge sentenced him to life imprisonment in the penitentiary.
The prosecutrix testified that on April 7, 1980, she was in Dothan on business and checked into the Sheraton at approximately 4:30 p.m. As she was walking to her room she saw a man, whom she identified as the appellant, standing near the lobby door. The appellant told her that he was conducting a meeting for ladies that afternoon and needed to know where the meeting rooms were. The prosecutrix stated that she did not know and proceeded to her room. After she opened the door, the prosecutrix walked over to the bed to put down her luggage. At this point she heard a knock on the door. The appellant was standing at the door with her key in his hand. The prosecutrix thanked him for the key and closed the door.
A little later in the afternoon the prosecutrix went out to get dinner and then returned to her room to do some work. After working for a while, she went back out to her car to get some other work. As she was returning to her room, she noticed the appellant was walking behind her. When she got to her door, the appellant stuck a gun in her back and pushed her in the room.
The prosecutrix started screaming. She was told to shut up and laugh, which she did. The appellant turned off the front light of the room and told her to turn off the back light. At this point, the appellant stood at the window and looked out for about thirty minutes. He told the prosecutrix that he was waiting for friends to pick him up. She asked if this had anything to do with drugs and he replied in the affirmative.
At this point, the appellant told the prosecutrix to take her clothes off and masturbate. She complied with his order because he kept the gun on her during this time. The appellant then approached the bed, pulled down his jeans and began to masturbate. He made the prosecutrix slide down to the end of the bed. He laid the gun down beside the bed and forced himself upon her.
Once the appellant had penetrated her, the prosecutrix told him she was not on the pill and did not want to get pregnant. The appellant ejaculated on her stomach.
The appellant then went in the bathroom and turned on the water in the bathtub and ordered the prosecutrix to get in it. He told her not to call the police and then closed the door and left.
When the prosecutrix got out of the bathtub she noticed the towel with which the appellant had cleaned himself up. She then called the desk clerk and insisted she be moved to another room. When the desk clerk learned that the prosecutrix had been raped, she urged her to call the police. The prosecutrix initially hesitated, but after talking with the desk clerk and the assistant manager, she agreed.
After talking to the police, the prosecutrix went to the hospital for an examination.
On December 9, 1980, the prosecutrix was again in Dothan on business. While driving down the by-pass, she noticed the appellant driving next to her in a light colored Volkswagon. When the appellant turned off the by-pass into the Ramada Inn parking lot, the prosecutrix got the car's *Page 1153 
tag number and went to the Sheraton and called the police.
Louis Miller, an officer with the Dothan Police Department, testified that he received a call from the prosecutrix on December 9, 1980. She gave him a description and a tag number of a vehicle. In response to the call, Miller went to the Ramada Inn and found a light colored Volkswagon which had a tag number that matched the one he had been given. A man eventually got in the car and Miller attempted to follow the car but lost it in traffic. Miller then obtained the address of the person to whom the tag was registered and he proceeded to that residence. Once there, Miller saw the appellant come out of the house, get into the car and go to the grocery store. When the appellant returned to his house, Miller asked the appellant if he could speak with the person who had been at the Ramada Inn in the Volkswagon that afternoon. The appellant denied that he had been at the Ramada and said no one had driven the car since he got home from work. Miller called the appellant later that night but the appellant refused to talk to him.
Alise Speck Marshall testified that in November of 1978 she traveled a great deal as part of her employment with Alabama Bank Corporation. On November 19, 1978, at approximately 6:30 p.m., she arrived at the Holiday Inn in Dothan. After she parked her car near the room which she had been given she proceeded to her room. Marshall was carrying some work in her arms. When she unlocked the door to her room, she turned around to turn on the lights and close the door. At this point a man, whom she identified as the appellant, came in behind her with a gun in his hand. She started to scream and he told her to shut up and start laughing. The appellant then turned on the television and looked out the window. After a while, he told her to take off her clothes. She resisted and he told her to go into the bathroom. She then began taking off all her clothes except her underwear. She told him she was having her period and did not wish to take them off. At this point he turned on the water in the bathtub and told her to sit down in it. The appellant instructed her not to call the police and then left. Marshall then called the police.
In December, 1980, Marshall picked the appellant's picture out of a group of photographs shown to her by the Dothan Police Department.
The appellant testified that on April 7, 1980, he got off from work early and went home and took a nap. When he waked up he went to O'Leary's Lounge at the Sheraton Inn at approximately 5:00 p.m. When he got out of his car in the parking lot he saw the prosecutrix. The two happened to walk together in the breezeway of the motel and they had a brief conversation. The appellant asked her for a drink and she told him she would take a raincheck because of all the work she had to do. He told her to think about it and he went into the lounge and she went to her room.
The appellant left the lounge around 6:00 and when he got to the parking lot he again saw the prosecutrix. He again asked her to have a drink and she told him she really had a lot of work to do. The appellant said something about all work and no play and she began to laugh and said "why not?".
The two began walking toward her room so she could put her work down. When they got to her room, she opened the door and the two stepped inside. She put her work down on the bed and told him to shut the door.
After the two talked a while, they began kissing and caressing. Eventually the two engaged in intercourse. He could not ejaculate because, during the course of the act, he began having guilt feelings.
At this point, the appellant started to dress and the prosecutrix made several comments about his shortcomings. He cleaned himself up and the prosecutrix went to take a shower. The appellant asked if she still wanted to have a drink and she replied that she didn't. He then left and went home. He denied having a gun on that occasion or using force. *Page 1154 
On December 9, 1980 at 5:30 p.m., the appellant went to the Ramada Inn. He didn't see the prosecutrix on his way there. Shortly, he left the Ramada and went home. After cutting firewood, he went to the grocery store. When he got back, the police were there. They asked him if anyone had been at the Ramada driving the light colored Volkswagon that afternoon. He said he had not been at the Ramada and no one had driven the car that afternoon.
The next day the appellant was arrested.
Elaine Scott, a criminalist in forensic serology with the Department of Forensic Sciences, testified that she had examined a bedspread, two bath towels and a wash cloth which were sent to her in connection with this appellant's case. After performing various tests, she was unable to detect the presence of seminal fluid on any of these items. She also did not find the presence of seminal fluid after vaginal and anal swabs were sent to her in this case.
Charles Brooks, a crime lab analyst with the Department of Forensic Sciences, testified that he examined the same items that Scott had examined. He was unable to find any evidence of the head or pubic hairs of the appellant.
Dr. J.M. Jones, Jr. stated he conducted a pelvic examination of the prosecutrix at 9:25 p.m. on April 7, 1980. He saw no signs of violence and there was no sperm present in her vaginal secretions.
In rebuttal, Jessie Lanier testified that she worked for the Internal Revenue Service. On November 8, 1978 she was in Dothan on business and was staying at the Ramada. At approximately 5:30 that afternoon, she was walking toward her room. As she walked up the stairs with her briefcase in her hand, she noticed someone at the bottom of the stairs. When she got to her room, the man at the bottom of the stairs was standing at the door of the room next to hers. She identified that man as the appellant. Lanier opened the door to her room and walked in. The appellant followed her in. He had a gun and she screamed. He told her to shut up but she continued screaming and he left.
 I
The appellant claims the trial judge erred by refusing to grant his motion for change of venue due to extensive pre-trial publicity surrounding his case and others in which he was allegedly involved.
 "Section 15-2-20, Code of Alabama 1975 states that a defendant is entitled to a change of venue to another county if he can show to the reasonable satisfaction of the trial court that a fair and impartial trial cannot be had in the county in which the indictment is found. Anderson v. State, 362 So.2d 1296
(Ala.Cr.App. 1978). "However, merely because jurors are not totally ignorant of the facts and issues involved in a particular case does not mean that an unbiased verdict cannot be expected in such case.
 "`In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'
Irvin v. Dowd, [366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751], supra.
 "There are two situations in which a change of venue is mandated. The first is when the defendant can show that prejudicial pre-trial publicity `has so saturated the community as to have a probable impact on the prospective jurors' and thus renders the trial setting `inherently suspect.' McWilliams v. United States, 394 F.2d 41 (U.S.C.A. 8th Cir. 1968); Dobbert v. Florida, 432 U.S. 282, *Page 1155 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). In this situation, a `pattern of deep and bitter prejudice' must exist in the community. Irvin v. Dowd, supra.
 "The second situation occurs when the defendant shows `a connection between the publicity generated by the news articles, radio and television broadcasts and the existence of actual jury prejudice.' McWilliams v. United States, supra."
Nelson v. State, 440 So.2d 1130, 1131-2 (Ala.Crim.App.), cert. denied, 440 So.2d 1130 (Ala. 1983).
It is not necessary for us to discuss this second situation since the appellant does not contend, nor would the record support, the contention that there existed actual juror prejudice against him as a result of the widespread pre-trial publicity. The trial judge thoroughly examined the jurors to ascertain their knowledge about the appellant's case. Each juror, including those who had heard about the case, indicated they could render an impartial verdict in this case based solely on the evidence presented from the witness stand at trial.
The appellant introduced numerous newspaper articles, as well as transcripts of television and radio broadcasts, to support his motion for change of venue. We must agree with the appellant that there was widespread and extensive news coverage of his case. However, widespread publicity, in itself, does not necessarily prove that a defendant will not get a fair and impartial trial.Gray v. State, 56 Ala. App. 131, 319 So.2d 750 (1975); Mathis v.State, 52 Ala. App. 668, 296 So.2d 755 (1973).
 "Generally newspaper articles which objectively report the commission of a crime, do not carry inflammatory headlines, and do not editorialize on the facts in a manner to inflame the community or create an atmosphere of prejudice are an insufficient basis on which to grant a motion for a change of venue. Gray v. State, 56 Ala. App. 131, 319 So.2d 750
(1975)."
Anderson v. State, 362 So.2d 1296 (Ala.Crim.App. 1978).
A review of the numerous articles included in the record indicate to this court that they are factual and objective accounts of the proceedings and developments in the appellant's case. The articles are not inherently prejudicial and do not tend to inflame the spirit of the community to rally against the appellant. See Robinson v. State, 430 So.2d 883 (Ala.Crim.App. 1983).
Since the news coverage of the appellant's case was not inherently prejudicial, the appellant attempted to demonstrate that due to the extensive publicity, it was doubtful he could receive a fair and impartial trial.
In support of this argument, the appellant introduced the results of a survey of the community conducted by Dr. Felix Livingston, a professor of economics at Troy State University. The results of this survey of 400 people in Houston County were that one out of five people had a fixed opinion of the appellant's guilt and one out of eight indicated they could not give the appellant the benefit of the doubt that he was innocent. Livingston indicated that this survey would have error margin of plus or minus five per cent.
The appellant has failed to convince this court that the results of the survey indicate that there existed a pattern of deep and bitter prejudice against the appellant due to the extensive pre-trial publicity.
A review of the record reveals numerous flaws in the administration of the survey and, therefore, we question the accuracy and reliability of this survey.
As this court has indicated on numerous occasions, a decision on a motion for change of venue is within the sound discretion of the trial judge. Nelson, supra. Since the trial judge lives in the community in which the appellant claims he cannot receive a fair trial, he has had the opportunity to assess the publicity from the perspective of his own community and, therefore, is in the better position to decide whether or not the appellant could receive a fair trial in that particular community. Robinson, supra. *Page 1156 
We do not believe the trial judge has abused his discretion here.
 II
The appellant contends that the evidence of the attacks on the two females, Marshall and Lanier, should not have been admitted.
 "The general rule is that evidence of other crimes not charged in the indictment is inadmissible if its only purpose is to show the bad character, inclination or propensity of the accused to commit the type of crime for which he is being prosecuted. Mason v. State, 259 Ala. 438, 66 So.2d 557 (1953); Brasher v. State, 249 Ala. 96, 30 So.2d 31 (1947). On the other hand, if the defendant's collateral misconduct is relevant and tends to show his commission of the current offense other than by suggesting that he is more likely to be guilty because of his past misdeeds, then the evidence is admissible. C. Gamble, McElroy's Alabama Evidence § 69.01 (3d ed. 1977).
 "Many Alabama cases have adopted the following exceptions to the general rule, or tests for relevancy, to determine whether evidence of uncharged crimes is admissible:
 `(1) Relevancy as part of res gestae. (2) Relevancy to prove identity of person or of crime. (3) Relevancy to prove scienter, or guilty knowledge. (4) Relevancy to prove intent. (5) Relevancy to show motive. (6) Relevancy to prove system. (7) Relevancy to prove malice. (8) Relevancy to rebut special defenses. (9) Relevancy in various particular crimes.'
 "E.g., Bobo v. State, 56 Ala. App. 622, 626, 324 So.2d 336 (1975) (quoting Wharton's Criminal Evidence § 31)."
Brewer v. State, 440 So.2d 1155 (Ala.Crim.App.), cert. denied,440 So.2d 1155 (Ala. 1983).
As the State points out in brief, the evidence of these attacks certainly was admissible under the intent exception to the general exclusionary rule. In the case at bar, the prosecutrix testified that the appellant forced himself on her at gunpoint. The appellant claims that the sexual intercourse was consensual. Therefore, since the appellant admitted the act of intercourse, but denied that it was without consent, the material issue is whether or not the intercourse was voluntary or by force. The evidence of the attacks was properly introduced to show the appellant's intent and to rebut his contention that the act was with the prosecutrix's consent. See Fisher v. State, 57 Ala. App. 310, 328 So.2d 311, cert. denied, 295 Ala. 401, 328 So.2d 321
(1976). Hogue v. State, 54 Ala. App. 682, 312 So.2d 86 (1975).
Furthermore, the attacks upon Marshall and Lanier were admissible to show a common plan, scheme or system and identity. These attacks along with the one upon the appellant are commonly referred to as "signature crimes." This term is used to "describe offenses so similar in pattern, plan, design, scheme, system or modus operandi that they `identify' the defendant as the perpetrator" of each. Brewer, supra at 1161. Smith v. State,409 So.2d 455 (Ala.Crim.App. 1982) and authorities therein cited.
We have examined these three attacks and have concluded that there is "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations . . ." and they were committed in a novel and "peculiar manner." Brewer, supra at 1161-63. The similarities and novelties are: (1) each of the incidents involved women who were in Dothan on business; (2) each incident occurred in the early evening; (3) each incident took place at a motel on the by-pass in Dothan; (4) each woman identified the appellant as her assailant; (5) in each incident, the appellant forced himself into the woman's room after she had just opened the door, and, (6) each time the appellant had a gun.
The similarities of Marshall's encounter and the prosecutrix's are even more striking. In both instances the women were told to laugh when they started to scream. Both times the appellant stood at the window *Page 1157 
of the room for a period of time. Both women were ordered to undress. Although Marshall was not raped, she was also told to get in the bathtub while the appellant turned on the water. The appellant told both women to stay in the bathtub and not call the police.
Therefore, we find that the evidence of the attacks upon Marshall and Lanier were properly admitted into evidence as exceptions to the general exclusionary rule. Hogue, supra and Smith, supra.
 III
The appellant alleges that the trial court erroneously refused to give the appellant's requested charge concerning evidence of other crimes which is admitted pursuant to a common plan, scheme or design.
This issue is not preserved for our review since the appellant failed to properly object to the trial judge's refusal to give the requested charge referred to above. Rule 14, Alabama Temporary Rules of Criminal Procedure; Allen v. State,414 So.2d 993 (Ala. 1982); Phillips v. State, 437 So.2d 666
(Ala.Crim.App. 1983); Williams v. State, 424 So.2d 1371
(Ala.Crim.App. 1982).
 IV
The appellant contends that the testimony of Sergeant Miller concerning his investigation at the Ramada Inn on December 9, 1980 was irrelevant and improperly admitted into evidence. He asserts that the events of December 9, 1980 were so remote in time from the date of the alleged rape, April 7, 1980, that Miller's testimony concerning his investigation on December 9, 1980 had no probative value and should have been excluded.
The admissibility of evidence, which has been challenged as irrelevant and remote, is within the sound discretion of the trial judge. A trial judge's decision to admit or exclude such evidence will not be overturned on appeal absent an abuse of his discretion. C. Gamble, McElroy's Alabama Evidence, § 21.01 (1), § 21.01 (2), § 21.01 (6) (3d ed. 1977); McLeod v. State,383 So.2d 207 (1980).
We do not find the trial judge abused his discretion here. "A fact is admissible into evidence if it has any probative value, however slight, upon a matter in the case." McElroy's, supra, § 21.01 (1).
From the date of the alleged rape until December 9, 1980, the identity of the prosecutrix's assailant was unknown. On December 9, 1980, when the prosecutrix informed Miller that she had seen her assailant driving on the by-pass in Dothan and that he had turned off the by-pass at the Ramada Inn, Miller went to the Ramada Inn to investigate. Miller followed a car (which bore the tag number the prosecutrix had given him) from the Ramada Inn to a house (later identified as belonging to the appellant). The appellant was eventually questioned at this house concerning his presence at the Ramada on the afternoon of December 9, 1980.
The appellant asserts that the appellant's identity was never in question during the trial. However, as the State's brief points out, the identity of the appellant as the assailant was unknown until December 9, 1980. The testimony of Miller had some probative value in that it showed how the appellant came to be a suspect in the case.
As to the remoteness issue, there is not a specific time period which defines remoteness. Smitherman v. State, 33 Ala. App. 316,33 So.2d 396 (1948). Furthermore, although the trial judge may reject what he considers to be remote evidence, he is not required to reject such evidence. Shanes v. State, 233 Ala. 418,172 So. 272 (1937).
Moreover, even if we had found Miller's testimony to be irrelevant, we do not believe that the appellant was harmed in any way by its admission into evidence. Therefore, we find no basis of error on this issue. *Page 1158 
 V
The appellant claims the testimony of Miller pertaining to his conversation with the appellant on December 9, 1980 should have been excluded from evidence because the appellant was not advised of his Miranda rights prior to the conversation.
The safeguards set out by the United States Supreme Court in Mirandav. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) are only applicable when an individual is subjected to custodial
interrogation. "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, supra, 384 U.S. at 444,86 S.Ct. at 1612.
Recently, in California v. Beheler, 463 U.S. 1121,103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), the United States Supreme Court held that "[A]lthough the circumstances of each case must certainly influence a determination of whether a suspect is `in custody' for purposes of receiving Miranda protection, the ultimate inquiry is simply whether there is a `formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, supra,103 S.Ct. at 3519-20.
In the case at bar, it is clear that the police initiated the conversation with the appellant on December 9, 1980. However, we must agree with Miller's testimony that the appellant was never"in custody" during the course of their conversation. See R. 218-220. Miller went to the appellant's home that day to identify the person who had been seen driving the vehicle which the prosecutrix had described for him. His inquiries of the appellant were merely investigatory and not accusatory. Therefore, no Miranda warnings were necessary. Kelley v. State,366 So.2d 1145 (Ala.Crim.App. 1979). Furthermore, Miranda warnings are not required simply because the police may suspect the one being questioned. Harris v. State, 376 So.2d 773
(Ala.Crim.App.), writ denied, 376 So.2d 778 (Ala. 1979). Miranda
becomes applicable when the person suspected by the police is taken into custody. Harris, supra.
Such was not the case here. Although the appellant was being investigated in connection with the rape of the prosecutrix, he was not "in custody" at the time of his conversation with Miller, and therefore, no Miranda warnings were required at that point in time.
 VI
During the course of trial, defense counsel sought to introduce the testimony of Dr. Carl Wiseman. Dr. Wiseman, a forensic psychiatrist had, after evaluating and examining the appellant, determined that the personality profile of the assailant of the prosecutrix and Ms. Speck was different from the appellant's. Before Dr. Wiseman was put on the stand, defense counsel filed a Motion in Limine asking the court to instruct the State to limit its cross-examination of Wiseman to only the prosecutrix's and Ms. Speck's case.
As defense counsel concludes in brief, the decision whether to grant a Motion in Limine rests within the sound discretion of the trial judge.
The trial judge, in the case at bar, denied defense counsel's motion because he felt it would be unfair to limit the State's cross-examination of Wiseman. We do not find that this rationale is an abuse of the trial judge's discretion and, therefore, his decision to deny defense counsel's Motion in Limine was not error.
 VII
The giving of the following jury charge, which was requested by the State, was objected to by the appellant:
 "The Court charges the Gentlemen of the Jury that a doubt sufficient to justify an acquittal must be reasonable and must be an actual and substantial doubt — we object to the substantial doubt as not being what a reasonable doubt is under *Page 1159 
the law of the State of Alabama. It is not a substantial doubt." (R. 566).
The appellant contends that this jury instruction reduced the State's burden of proof. We find no merit to this argument.
The court's full charge on this matter reads as follows:
 "Now, the phrase reasonable doubt, Ladies and Gentlemen of the Jury, is self-explanatory. And, efforts to define that term do not always clarify the term. But, it may help you in some way to say that the doubt which would justify an acquittal must be an actual and a substantial doubt and not a mere possible doubt. A reasonable doubt is not a mere guess or a surmise. And, it is not a forced capricious doubt. Ladies and Gentlemen, if after considering all the evidence in the case, if you have an abiding conviction of the truth of the charge, then you are convinced beyond a reasonable doubt. And, it will be your duty to convict this Defendant, Columbus Fletcher Primm, Jr. The reasonable doubt which entitles an accused to an acquittal is not a mere fanciful, vague, conjectural or speculative doubt, but a reasonable, substantial doubt arising from the evidence and remaining after a careful consideration of the testimony such as reasonable and fair-minded and conscientious men would entertain under all the circumstances.
 "Now, you will observe that the State is not required to convince you of the Defendant's guilt beyond all doubt and to the point that you could not possibly be mistaken. But, simply beyond all reasonable doubt and to a moral certainty. If after comparing and considering all the evidence in the case, your minds are left in such a condition that you cannot say that you have an abiding conviction to a moral certainty of the Defendant's guilt, then you are not convinced beyond a reasonable doubt. And, the Defendant would be entitled to an acquittal." (R. 562-563).
As the State contends in its brief, the jury charge requested by the State was merely a restatement of part of the court's oral charge. We do not find the jury charge to be misleading or an incorrect statement of the applicable law. Section 12-16-13, Code of Alabama 1975.
For the reasons stated above, this cause is due to be and is hereby affirmed.
AFFIRMED.
BOWEN, P.J., and TAYLOR and McMILLAN, JJ, concur.
PATTERSON, J., recuses self.