Dwight Jerome Jones, the appellant, was convicted of first degree rape in violation of Ala. Code 1975, § 13A-6-61, and was sentenced to 30 years' imprisonment. At the same trial, he was also convicted of sexual abuse in the first degree in violation of § 13A-6-66 and was given a consecutive sentence of seven years' imprisonment. On this appeal from those convictions, the appellant argues that, at his trial, the State improperly introduced evidence of a collateral criminal act and that the evidence does not support his convictions.
 I.
The appellant was indicted for the attempted rape of S.W. At the close of the State's case-in-chief, the trial judge, on motion of the appellant, reduced that charge to sexual abuse in the first degree. In his own defense, the appellant testified that S.W. initially agreed to have sex with him in exchange for crack cocaine, but that she *Page 98 
changed her mind and no sexual contact occurred. The appellant was convicted of the first degree sexual abuse of S.W.
The appellant was convicted as charged for the first degree rape of J.H. The appellant admitted having sexual intercourse with J.H. but claimed that it was consensual and without force or threat.
In rebuttal to the evidence of consent presented by the defense, the prosecution introduced, over objection, the testimony of D.U. that the appellant had raped and beaten her on November 21, 1987. The appellant had been charged with and convicted of assault in the third degree in connection with that offense. In admitting D.U.'s testimony to rebut the defense of consent, the trial judge stated:
 "McElroy's [Alabama Evidence] pocket part section 69.01(6) [(3d ed. 1977)] cites an A.L.R. article, 2 A.L.R.4th 330, it's entitled 'admissibility in rape cases of evidence that accused raped or attempted to rape person other than the prosecutrix.' That article cites two Alabama cases holding that this type of evidence would be admissible to rebut the consent defense, so I am going to overrule the defendant's motion."
The appellant, citing Anonymous v. State, 507 So.2d 972 (Ala. 1987), Bowden v. State, 538 So.2d 1226 (Ala. 1988), and related cases, argues that the admission of the evidence of the unrelated offense involving D.U. constituted prejudicial and reversible error. In Anonymous, the Alabama Supreme Court held that the testimony regarding the defendant's alleged prior intercourse with his daughters, their pregnancies, and the defendant's procurement of abortions was not admissible in order to prove the defendant's "identity" or "intent" to commit the acts of incest and first degree rape with which he was charged. Anonymous, 507 So.2d at 975. Bowden "clarified"Anonymous:
 "However, we wish to clarify that, just as we do not liberally extend the exceptions to the rule of exclusion [of other offenses] in sex crime prosecutions, neither do we intend that their applicability be more narrowly restricted in such cases, notwithstanding dicta in Anonymous to the contrary. The same factors for determining the admissibility of collateral acts of misconduct by the accused in other types of prosecutions are to be applied in determining the admissibility of collateral acts of sexual misconduct in the prosecution of sex crimes. Which is to say that, provided the test for materiality is met, evidence of collateral crimes or misconduct may be admitted. Of necessity, this analysis is case by case."
Bowden, 538 So.2d at 1233 (emphasis in original), quoted inStaten v. State, 547 So.2d 607, 610 (Ala. 1989).
The general rule with regard to the specific issue involved in this case is found in Annot., 2 A.L.R.4th 330, § 6(a)(1980), which was cited by the trial judge in denying the appellant's objection to the admission of D.U.'s testimony:
 "With regard to the question of the admissibility of evidence that the accused raped or attempted to rape another woman for the purpose of demonstrating the complainant's lack of consent or the accused's use of force, the rule appears to be that while such evidence is inadmissible where the only issue involved in the case is whether the act of intercourse was voluntary, such evidence is admissible for the purpose of showing lack of consent or the use of force if it also falls within one of the other exceptions to the general rule of inadmissibility, such as where the evidence also establishes a common scheme or plan on the part of the accused."
The first mention we have found in Alabama case law concerning the admissibility of evidence of a collateral offense to rebut a defense of consent to a prosecution for rape is in Chancellor v. State, 38 Ala. App. 89, 91, 80 So.2d 313,314 (1954), cert. denied, 262 Ala. 700, 80 So.2d 315 (1955). In that case, the Alabama Court of Appeals held admissible a subsequent act of rape between the defendant and the prosecutrix which occurred no more than one hour after the first:
 "We think and hold that the evidence which was allowed over appellant's objections *Page 99 
supported the elements of intent, motive, and non consent in relation to the circumstances incident to the first act of sexual intercourse.
 "The jury was faced with the task of deciding whether the young lady surrendered her body voluntarily to the sexual desires of the defendant as he claimed, or whether she was forced to do so as she claimed.
 "The conduct of the accused with which we are presently concerned was not so far removed in point of time or disconnected with the association of the couple during the period to cause it to lose its probative value in support of proof of the offense charged in the indictment."
Chancellor, 38 Ala. App. at 91, 80 So.2d at 314. In Chancellor, however, both the charged offense and the subsequent conduct were with the same person. See Bowden, 538 So.2d at 1235-36;Flanagan v. State, 533 So.2d 637, 642 (Ala.Cr.App. 1987).
The case of Fisher v. State, 57 Ala. App. 310, 328 So.2d 311, cert. denied, 295 Ala. 401, 328 So.2d 321 (1976), is cited in the A.L.R. annotation as support for the general rule that "while [evidence that the defendant raped or attempted to rape another woman] is inadmissible where the only issue involved in the case is whether the act of intercourse was voluntary, such evidence is admissible for the purpose of showing lack of consent or the use of force if it also falls within one of the other exceptions to the general rule of inadmissibility." 2 A.L.R.4th at 374. In Fisher, the defendant admitted having sexual intercourse with the prosecutrix but claimed that it was consensual and was in fact at her urging. 57 Ala. App. at 312,328 So.2d at 313. In rebuttal, Ms. L., who was not the prosecutrix, testified that she had been assaulted by the defendant five days earlier. 57 Ala. App. at 313, 317,328 So.2d at 314, 317. This Court held that Ms. L.'s testimony was admissible to impeach the defendant's testimony on cross-examination that he had never attempted to have sex with any white woman other than the prosecutrix and a woman in Oregon. 57 Ala. App. at 317, 328 So.2d at 318. Moreover, by way of dicta, this Court went on to state:
 "Additionally, his [the appellant's] testimony would lead one to believe that he in no way used any force on the prosecutrix, but was an innocent victim of her lust. The testimony of E.L., that she was attacked by this same appellant five days prior to the alleged attack upon the prosecutrix, should be relevant to show motive and intent or to rebut the appellant's defense that the act was voluntary. We are of the opinion that the trial court did not err in admitting the testimony of E.L.. See Hogue v. State, 54 Ala. App. 682, 312 So.2d 86 [(1975)], and cases cited therein."
Fisher, 57 Ala. App. at 317, 328 So.2d at 318.
The Hogue case cited in Fisher involved a prosecution for assault with intent to ravish and held that evidence of a prior assault was admissible on the issues of the defendant's intent and identity, where "the similarity in circumstances of time, place, and method of operation" between the prior assault and the assault for which the defendant was being prosecuted was "great." Hogue, 54 Ala. App. at 691, 312 So.2d at 95. The crime of assault with intent to ravish is obviously, by definition, a crime where a specific intent is the element of the offense. However, subsequent holdings of the Alabama Supreme Court make it clear that the "intent exception is rarely applicable in prosecutions for first degree rape." Bowden, 538 So.2d at 1235.
The "intent" exception cannot be applied in this case.
 "Under §§ 13A-6-60 and -61, Code of 1975, rape in the first degree does not require any specific
criminal intent. . . . The intent exception is simply not applicable in a case that requires no specific criminal intent as a prerequisite to conviction. See McElroy's § 69.01(5) and cases cited therein. As was explained by Justice Shores in [Ex parte] Cofer, [440 So.2d 1121 (Ala. 1983)], any intent necessary to this type of crime could be inferred by the jury from the testimony about the act charged. . . ." *Page 100 
Anonymous, 507 So.2d at 975. See also Hooper v. State, 106 Ala. 41,17 So. 679, 680 (1895). In view of these Alabama Supreme Court cases, Fisher should not be construed as supporting the proposition that evidence of an unrelated collateral forcible rape of one other than the prosecutrix is admissible solely to rebut a defense of consent.[1]
Unfortunately, it appears that Fisher has been so interpreted by this Court. In Oglen v. State, 440 So.2d 1172, 1176
(Ala.Cr.App.), cert. denied on procedural grounds,440 So.2d 1177 (Ala. 1983), this Court stated:
 "Because the victim's consent was the only issue in this case, the evidence of the prior rape was admissible, under an exception to the general exclusionary rule, to prove the defendant's criminal intent or motive, or the nonconsent of the victim. Chancellor v. State, 38 Ala. App. 89, 80 So.2d 313, cert. denied, 262 Ala. 700, 80 So.2d 315
(1954); O'Berry v. State, 361 So.2d 1132
(Ala.Cr.App.), cert. denied, 361 So.2d 1135 (Ala. 1978) [assault with intent to ravish]; Cofer v. State, 440 So.2d 1116 (Ala.Cr.App. 1983) [(first degree sexual abuse), reversed, 440 So.2d 1121
(Ala. 1983)]; C.Gamble, McElroy's Alabama Evidence, Section 70.01(22)(d) (3d ed. 1977)."
In Primm v. State, 473 So.2d 1149 (Ala.Cr.App. 1985), the defendant was convicted of rape in the first degree. In its case-in-chief the State presented the testimony of A.M., a person other than the prosecutrix, that the appellant had attempted to rape her approximately 17 months prior to the charged offense. 473 So.2d at 1153. The defendant took the witness stand and admitted having sexual intercourse with the prosecutrix but claimed that it was with her consent. Id. In rebuttal, J.L. was allowed to give testimony tending to show that the defendant had attempted to rape her approximately 17 months prior to the charged offense. Id. at 1154. CitingFisher, this Court held:
 "As the State points out in brief, the evidence of these attacks certainly was admissible under the intent exception to the general exclusionary rule. In the case at bar, the prosecutrix testified that the appellant forced himself on her at gunpoint. The appellant claims that the sexual intercourse was consensual. Therefore, since the appellant admitted the act of intercourse, but denied that it was without consent, the material issue is whether or not the intercourse was voluntary or by force. The evidence of the attacks was properly introduced to show the appellant's intent and to rebut his contention that the act was with the prosecutrix's consent."
Primm, 473 So.2d at 1156.
In Pride v. State, 473 So.2d 576, 578 (Ala.Cr.App. 1984), this Court held: "Based upon the proposition stated in Fisher,supra, appellant's prior bad act was correctly admitted to show the appellant's intent to commit rape in the present case and negate his defense of consent. Glanton v. State, 474 So.2d 154
(Ala.Crim.App. 1984)." The Glanton case held that the testimony of the victim of an earlier sexual attack by the defendant was admissible to negate the defense that a victim of one of the charged offenses of first degree rape initiated and encouraged the sexual activity. Glanton, 474 So.2d at 156.Glanton cited Fisher as authority and was reversed on other unrelated *Page 101 
grounds in Ex parte Glanton, 474 So.2d 156 (Ala. 1985).
In Martin v. State, 504 So.2d 335, 338 (Ala.Cr.App. 1986), the State presented evidence of a collateral offense in its case-in-chief. This Court held:
 "The law in Alabama is well settled that evidence of prior or subsequent offenses is admissible as an exception to the general [exclusionary] rule in order to show intent on the part of an appellant charged with first degree rape where the appellant alleges consent as a defense. Primm v. State, 473 So.2d 1149 (Ala.Crim.App. 1985); C. Gamble, McElroy's Alabama Evidence §§ 69.01, 70.01(22)(d) (3d ed. 1977)."
(Emphasis in original.) Thus, it appears that the general rule stated above and found in 2 A.L.R.4th § 6(a) at 374, has been modified, either intentionally or unintentionally, by Alabama case law to state that evidence of a collateral sexual offense is admissible where consent is the only issue involved in the case. That principle is questionable for several reasons.
First, as we have already indicated, a close reading ofFisher reveals that that case should not be interpreted as holding that a collateral offense is admissible solely to rebut a consent defense. To the extent that Fisher has been so construed, it must be recognized that the language giving rise to such a construction was merely dicta. Second, the Alabama Supreme Court cases of Cofer, Anonymous, and Bowden conflict with such an interpretation of Fisher and cast doubt upon the cases Oglen, Primm, Pride, Martin, and Glanton
— which have so interpreted Fisher. Third, unless there is some logical and reasonable connection or relation between the forcible rape of two different women, "the fact that one woman was [forcibly] raped has no tendency to prove that another woman did not consent to intercourse." 2 A.L.R.4th § 6(b) at 378. "On the trial of a person for the alleged commission of a particular crime, evidence of his doing another act, which itself is a crime, is not admissible if the only probative function of such evidence is to show his bad character, inclination or propensity to commit the type of crime for which he is being tried." McElroy's at § 69.01(1).
However, we find that the trial judge acted within his discretion in admitting the evidence of the collateral rape in this case. Under the general rule stated in 2 A.L.R.4th § 6(a) at 374, the evidence of the collateral offense was "admissible for the purpose of showing lack of consent or the use of force [because] it also falls within one of the other exceptions to the general rule of inadmissibility," in that this "evidence also establishes a common scheme or plan on the part of the accused."
Under the common scheme, plan, or design exception to the general rule excluding the admission of evidence of uncharged collateral offenses, the crime charged and the collateral offense must have some logical connection:
 "Under the common scheme, plan or design exception to this rule, the crime charged and the collateral crime must have ' "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." ' Mayberry v. State, 419 So.2d 262, 268 (Ala.Cr.App. 1982)."
Allen v. State, 478 So.2d 326, 331 (Ala.Cr.App. 1985).
We find that the offenses against J.H. and D.U. had a logical connection despite the differing facts of each particular offense.
The State's evidence shows that J.H. had known the appellant for two or three years and the appellant was "no stranger" to her. However, she had never dated or had sex with the appellant. On the afternoon of May 19, 1988, J.H. was at the home of Ethel Lee Minor at 58 McKenzie Court washing clothes. Later that afternoon, the appellant came to Ms. Minor's residence. J.H. needed some postage stamps for her boyfriend who had been in prison for almost three weeks. When the appellant announced that he was going to get some *Page 102 
beer, J.H. asked if he would drop her off at "Winston's" so she could buy the stamps. Winston's was about 10 or 15 minutes' walking distance from the house. The appellant agreed to take J.H. However, the appellant kept driving and did not stop at Winston's. J.H. testified that the appellant "mentioned something about going to his sister's house to get some clothes or something."
J.H. testified that before they got to Winston's, she turned to look at the appellant and he had a gun. She thought "maybe it was a little joke." The gun was pointed at J.H., but, according to J.H., the appellant "wasn't so close like, you know, like he wanted to kill me. He wasn't really talking about he was going to shoot me with it or anything like that." J.H. said she looked away from the appellant and did not see the gun again. They drove around for about an hour and discussed J.H.'s boyfriend.
Finally, the appellant said, "I am going to take you to a place that you will like." J.H. testified that the appellant kept saying, "Bitch, you [are] going to fuck me or die." The appellant drove on a dirt road, stopped the car, and got out. When J.H. tried to get out of the car and "make a break" the appellant grabbed her and said, "If you scream, bitch, I am going to beat your damn ass," "You going to do something if it take[s] all night," and "You going to suck me, too." The appellant told J.H. that he would keep her there until she did what he wanted her to do. J.H. testified that the appellant "was just using a lot of vile language to me and saying threatening things." He did not slap her. J.H. undressed herself and got in the back seat of the car as the appellant had instructed her. The appellant also got in the back seat of the car and had sexual intercourse with J.H.
J.H. testified that she told the appellant she had to urinate. The appellant got off of her and started putting on his clothes. However he would not let J.H. put her clothes on because he said he was "not through yet". Outside the car, the appellant attempted to force J.H. to perform fellatio. J.H. pushed the appellant away and ran. The appellant chased her and said that if he caught her, he would kill her. J.H., totally naked, ran to the highway. A car stopped and took her to a service station, where the sheriff was called.
D.U. testified that she had come from Huntsville to visit her sister at McKenzie Court on November 21, 1987. She knew the appellant and had previously engaged in sexual intercourse with him. D.U. was spending some time with her girlfriend when the appellant came over to the girlfriend's residence and asked D.U. if she would go to his sister's house with him. D.U. got in the car with the appellant and John White. The appellant and White were drinking Thunderbird wine. When D.U. asked where they were going, the appellant told her to "shut [her] damn mouth," and took her to a dirt road in the Cottondale area. D.U. got out of the car "back out in the woods somewhere" and urinated but the appellant would not let her pull her clothes back up, and "snatched [her] clothes down." The appellant retrieved a pillow and a pair of overalls from the trunk of the car, threw them on the ground, and made D.U. lie on them. Then both the appellant and White forcibly raped D.U. The two men "beat" D.U. when she refused to perform fellatio on them. The appellant placed a knife at D.U.'s stomach and said that he was going to kill her, but he did not cut her. He then got a tire tool and "was fixing to hit" D.U. when White stopped him. They then drove from the woods to a flea market near a service station. The appellant began beating D.U. when she asked a man for help. When the appellant walked away to get some gasoline, D.U. telephoned the police.
In our opinion, the connection between the offense involving J.H. and that involving D.U. is sufficient to justify the admission of D.U.'s testimony. Although there are distinctions between the two offenses, *Page 103 
in each case the appellant employed the guise of going to his sister's home in order to lure a "friend" to an isolated and wooded area of the county.[2] The appellant used vulgar language and either force or the threat of force upon both victims. After having sexual intercourse, the appellant attempted to make each victim perform fellatio. We think these similarities are sufficient to show that when the appellant wanted sexual favors from a "friend" he went about obtaining those favors in a particular manner and pursuant to a specific plan.
We find no error in the admission of the evidence concerning the collateral offense because the evidence was properly admitted under the common plan, design, or scheme exception to the general rule excluding evidence of collateral offenses.
 II.
Finding no legal merit to his argument, we dismiss, without discussion, the appellant's contention that the State's evidence does not support his convictions. The testimony of the victim alone is sufficient to establish a prima facie case of either rape or sexual abuse. See Patterson v. State,455 So.2d 284 (Ala.Cr.App. 1984) (rape and sodomy); Faircloth v. State,471 So.2d 485, 488 (Ala.Cr.App. 1984), affirmed, 471 So.2d 493
(Ala. 1985) (attempted rape); Williams v. State, 51 Ala. App. 1,5, 282 So.2d 349, 352, cert. denied, 291 Ala. 803,282 So.2d 355 (1973) (rape or any lesser included offense).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] We note that there is authority for the proposition that "[t]he exclusionary rule does not apply where a prior crime or bad act is being offered to rebut a special defense." Royal v.State, 447 So.2d 834, 837 (Ala.Cr.App. 1983). However, this proposition does not permit the blanket admission of collateral sexual offenses in any sex crime prosecution where consent is offered as a defense. While the defendant in Royal was charged with forcible rape and raised the defense of consent, the collateral crime was not another rape, but a burglary in which the knife used in the commission of the rape was stolen. See also Johnson v. State, 335 So.2d 663, 673 (Ala.Cr.App.), cert. denied, 335 So.2d 678 (Ala. 1976), cert. denied, 429 U.S. 1026,97 S.Ct. 649, 50 L.Ed.2d 629 (1976) (a murder case in which this Court acknowledged "several . . . well-established exceptions" to the principle excluding the admission of evidence of collateral crimes, including as one of those exceptions, "[r]elevancy to rebut special defenses");McElroy's, § 69.01(13) (Supp. 1988) (admissibility of collateral offenses to rebut special pleas and defenses).
[2] We note that the appellant also employed this approach in S.W.'s case. According to S.W., she and the appellant grew up together in McKenzie Court. On March 18, 1988, the appellant came over to her house between 3:00 and 3:30 in the afternoon. He said he was going to his sister's house. S.W.'s mother lived near the appellant's sister and S.W. asked the appellant if he could give her a ride to her mother's. John White was driving the car. White testified against the appellant. He had pleaded guilty and had been convicted of the attempted rape of S.W.
White did drive to S.W.'s mother's but told S.W. he was going to Prattville. S.W. testified that she told White to stop the car and the appellant said "No, man, she going on with us, she going to give us some pussy." When S.W. threatened to turn off the ignition, the appellant said; "If she do that, beat her up side her goddamn head." The appellant kept trying to "hug" her, grabbed and squeezed her breasts, and tried to lift her skirt.
White turned into a residential area when S.W. threatened to "pee" in the car if they did not stop the car and let her urinate. After S.W. refused to urinate in view of the houses, he drove to a dirt road. S.W. got out of the car to relieve herself. She and the appellant began "tussling" and the appellant tried to throw her back inside the car. S.W. began "hollering" and managed to run away from the two men. She ran to a porch of a vacant house and then hid behind a tree as the appellant and White drove by. S.W. then ran to another house and telephoned her father.