JOINER, Judge.
Lakwajame Savatae Richards was charged by indictment with second-degree assault, see § 13A-6-21, Ala.Code 1975. On June 10, 2013, Richards filed a pretrial motion to suppress “the statements provided by [Richards] to the Montgomery Fire Department as well as the Montgomery Police Department.” (C. 17.) Specifically, Richards argued in his motion to suppress that he “was questioned by the Montgomery Fire Department pursuant to an ongoing criminal investigation which allegedly began with [Richards] shooting the victim”; that “members of the Montgomery Fire Department interrogated [Richards] and had him provided [sic] a written statement to the alleged events without properly advising [him] of his right against self-incrimination as well as his right to counsel”; that,
“after receiving the tainted statement from [Richards], the Montgomery Fire Department provided said statement to the Montgomery Police Department where the police department used the tainted statement in an interrogation of the same events where the police took a second statement regarding the exact same circumstances as those covered by the statement obtained by the fire department”;
and that “the original statement provided to the Montgomery fire department was not knowingly and voluntarily given and the second statement obtained by the Montgomery Police Department was fruit of the poisonous tree.” (C. 17-18.)
*644 At the suppression hearing, the undisputed evidence established the following: William Fulton, an arson investigator for the Montgomery Fire Department, was assigned to investigate a fire that occurred on July 30, 2012, at an automobile “body shop” in Montgomery. According to Investigator Fulton, a building and nine vehicles were intentionally set on fire. Investigator Fulton testified that, during the investigation, he had “numerous names” of individuals who could have information about the arson, but Richards was not one of them. Investigator Fulton stated, however, that he “had heard on the radio — on our fire department radio, which [they] also scan [police department] channels,” that there had been a shooting at the body shop that occurred the same day as the fire and that an individual known as “Kwat” might have been involved in the shooting. Investigator Fulton testified that he knew “Kwat” was Richards’s alias because, he said, he had previously investigated an arson in which Richards was the victim, and, he testified, he knew where Richards lived.
Investigator Fulton stated that, on August 9, 2012, he and Captain Williams[1] of the Montgomery Fire Department went to Richards’s house and knocked on the door to ask Richards “if he had any information about what happened with that fire.... [o]r who set [that] fire.” (R. 12.) Investigator Fulton further testified that,
“prior to getting into talking to him about it, I asked him did he want to come out and sit in the car because a lot of time in the neighborhoods — and he had already stated that he had people shooting at the house and things like •that. So I said, well, [why] don’t we just sit in the car; that way, we’ll be sort of out of sight and any neighbors — you know, if he had any rival persons around there, that wouldn’t be an issue. So we just asked him to let him sit in the back seat. And it’s not a caged police car it’s just a regular Crown Vic.”[2]
(R. 13.) Investigator Fulton stated that he did not tell Richards that he was being charged with anything, did not tell Richards that he was under arrest, did not tell Richards that he was taking him into custody, and did not place Richards in handcuffs.
According to Investigator Fulton, Richards sat alone in the backseat of the car while Investigator Fulton and Captain Williams sat in the front seat. Investigator Fulton stated that he then
“asked [Richards] to take [them] - through the daily events of what took place. And during that time, [Richards] gave [them] information about an altercation that took place out there at the body shop.... ”
(R. 15.) Investigator Fulton stated that Richards told them that “he and another person out there basically got in a gun fight.” (R. 16.) Investigator Fulton also testified that Richards had information about the fire; specifically, that there were three people involved and that he was able to provide their aliases. According to Investigator Fulton, the interview with Richards lasted “approximately 29 minutes,” and, he said, at no time did he or Captain Williams advise Richards of “any of his constitutional rights.” (R. 33-34.) Investigator Fulton testified that, after he and Captain Williams interviewed Richards, *645 “[they] left and [Richards] went back in his house.” (R. 19.)
Investigator Fulton further testified that, in addition to his oral statement, Richards provided a written statement. With regard to the written statement, Investigator Fulton testified that a blank form was. left with Richards for him to fill out and that he and Captain Williams told Richards they would come back and pick it up from him at a later time. Investigator Fulton testified that another fire investigator — S.S. White — picked up Richards’s written statement on September 27, 2012, at Richards’s house. Investigator Fulton stated that, after he received Richards’s written statement, he turned it over to the Montgomery Police Department.
David Wise, a detective with the Montgomery Police Department, testified that Richards was arrested in connection with the shooting on November 6, 2012.
After the State presented its evidence at the suppression hearing, both Richards and the State made arguments to the circuit court. Thereafter, on August 7, 2013, the circuit court issued a written order stating, in total, as follows: “Motion to suppress filed by [Richards] is hereby granted.” (C. 19.) Pursuant to Rule 15.7, Ala. R.Crim. P., the State appeals the circuit court’s ruling.
Initially, we note that the evidence presented at the suppression hearing was undisputed. Regarding the proper standard of review to be applied in this case, this Court has held:
“In reviewing decisions of a trial court concerning a suppression of evidence, we apply a de novo standard of review when the evidence is not in dispute. State v. Hill, 690 So.2d 1201, 1203 (Ala.1996). Because the evidence is undisputed, and the only quarrel is with the application of the law to the facts, we will review the evidence de novo, ‘indulging no presumption in favor of the trial court’s application of the law to those facts.’ Stiles v. Brown, 380 So.2d 792, 794 (Ala.1980) (citations omitted).”
State v. Banks, 734 So.2d 371, 372 (Ala.Crim.App.1999). With this principle in mind, we address the State’s argument on appeal.
On appeal, the State contends that the circuit court erred when it suppressed Richards’s statements because, the State says, at the time he provided the statements, Richards “was not in custody for purposes of requiring Miranda[ v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966),] warnings.” (State’s brief, p. 5.) Richards, on the other hand, contends that “he was in custody at the time he provided Investigator Fulton ... with a confession as to his involvement in the shooting.” (Richards’s brief, p. 14.)
This Court has held:
“Miranda warnings are not required unless the suspect has been arrested or is in custody..
“ ‘ “Miranda warnings are not necessarily required to-be given to everyone whom the police question. Oregon v. Mathiason, 429 U.S. 492 [493— 95], 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977). Miranda is only applicable when an individual is subjected to custodial interrogation. Davis v. Allsbrooks, 778 F.2d 168, 170 (4th Cir.1985); Primm v. State, 473 So.2d 1149, 1158 (Ala.Crim.App.), cert. denied, 473 So.2d 1149 (Ala.1985). ‘By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.’ Miranda, supra, 384 U.S. at 444, 86 S.Ct. at 1612.
*646 “ ‘ “There is a distinction which must be made between general interrogation and custodial interrogation since Miranda is inapplicable when interrogation is merely investigative rather than accusative. Kelley v. State, 366 So.2d 1145, 1148 (Ala.Crim.App.1979); Primm, supra, at 1158; Johnston v. State, 455 So.2d 152, 156 (Ala.Crim.App.)[,] cert. denied, 455 So.2d 152 (Ala.1984). This distinction should be made on a case-by-case basis after examining all of the surrounding circumstances. United States v. Miller, 587 F.Supp. 1296, 1299 (W.D.Pa.1984); Johnston, supra, at 156; Warrick v. State, 460 So.2d 320, 323 (Ala.Crim.App.1984); Hall v. State, 399 So.2d 348, 351-52 (Ala.Crim.App.1981); Kelley, supra at 1149.
“ ‘ “The United States Supreme Court in California v. Beheler, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983)[,] articulated ‘the standard by which “custody” is to be judged.’ Davis, supra at 171. In its opinion, the Supreme Court stated that ‘although the circumstances of each case must certainly influence a determination of whether a suspect is “in custody” for purposes of receiving Miranda protection, the ultimate inquiry, is simply whether there is a “formal arrest or restraint on freedom of movement” of the degree associated with a formal arrest.’ California v. Beheler, supra, 463 U.S. at 1125, 103 S.Ct. at 3519-20 (quoting Mathiason, supra, 429 U.S. at 495, 97 S.Ct. at 714). See also Primm, supra, at 1158.
“ ‘ “A determination of ‘custody’ is not based on ‘the subjective evaluation of the situation by the defendant or the police officers.’ Davis, supra at 171. Where there has not been a formal arrest (as here), an objective test is used to determine whether the suspect’s freedom of action has been restricted by the police in any significant manner. Davis, supra at 171; Miller, supra at 1299; Warrick, supra at 322; Hall, supra at 351. ‘The only relevant inquiry is how a reasonable man in the suspect’s position would have understood his position.’ United States v. Jonas, 786 F.2d 1019, 1022 (11th Cir.1986) (quoting Berkemer v. McCarty, 468 U.S. 420 [442-44], 104 S.Ct. 3138, 3152, 82 L.Ed.2d 317 (1984)).” ’
“Smolder v. State, 671 So.2d 757 (Ala.Cr.App.1995) (quoting Hooks v. State, 534 So.2d 329, 347-48 (Ala.Cr.App.1987)).
“ ‘In order to decide if a suspect is “in custody,” the court, looking at the totality of the circumstances, must find that a reasonable person in the accused’s position would believe that he or she is not free to leave. Landreth [v. State ], 600 So.2d [440,] 444 [ (AIa.Cr.App.1992) ].
“ ‘ “In deciding whether the questioning of a suspect is ‘custodial’ the following factors should be considered:
“ ‘ “ ‘whether the suspect was questioned in familiar or neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint of the suspect, the duration and character of the questioning, how the suspect got to the place of . questioning, the language used to summon the suspect, the extent to which the suspect is confronted with evidence.of guilt, and the degree of pressure applied to detain the suspect.’ ”
“‘600 So.2d at 444, quoting P.S. v. State, 565 So.2d 1209, 1214 (Ala.Cr. App.1990).’
*647 “Johnson v. State, 673 So.2d 796[, 798] (Ala.Cr.App.1995).”
State v. Jude, 686 So.2d 528, 532-33 (Ala.Crim.App.1996).
Applying the factors for determining whether a custodial interrogation occurred to the circumstances in this case, Richards was not “in custody” for purposes of requiring Miranda warnings when he provided his statements to Investigator Fulton and Captain Williams. Specifically, the undisputed evidence presented at the suppression hearing established that Richards voluntarily accompanied Investigator Fulton and Captain Williams to Investigator Fulton’s car to answer questions about any information that he had regarding a fire that occurred at the body shop; that Richards was not formally placed under arrest and was not physically restrained in any way; that the interview occurred in a location familiar to Richards — the street in front of his house; that the interview was relatively brief — approximately 30 minutes; and that Richards, after making an inculpatory oral statement about the shooting, was allowed to return to his home to make a written statement that was picked up at a later time.
Thus, the undisputed evidence “clearly shows that a reasonable person in [Richards’s] position would not have felt that he was in custody when he gave his statement[s]. Consequently, no Miranda warnings were required before the questioning of [Richards].” Jude, 686 So.2d at 534. Accordingly, the judgment of the circuit court is reversed, and this case is remanded to the circuit court for further action consistent with this opinion.[3]
REVERSED AND REMANDED.
WINDOM, P.J., and WELCH, KELLUM, and BURKE, JJ., concur.

. The record on appeal is not clear as to Captain Williams’s full name.

. On cross-examination, Investigator Fulton testified that the "Crown Vic” is a fire-department vehicle similar to those used by law-enforcement, detectives but that there is nothing on the vehicle that would indicate it is a fire-department vehicle.

. We recognize that the circuit court made no findings of fact in its order granting Richards’s motion to suppress.
"Although we could remand the case for findings of fact so that we would know the basis of the trial court's ruling, as we did in the similar case of State v. Gaston, 512 So.2d 799 (Ala.Cr.App.1987), we deem that to be unnecessary in this case because all of the material facts are before us and uncontested.”
Jude, 686 So.2d at 534.