Jackie Sue Schut was indicted in a four count indictment for capital murder, in violation of § 13A-5-40, Code of Alabama 1975, murder, in violation of § 13A-6-2, Code of Alabama 1975, kidnapping in the first degree, in violation of § 13A-6-43, Code of Alabama 1975, and kidnapping in the second degree, in violation of § 13A-6-44, Code of Alabama 1975. The capital murder count was nol prossed. The jury found the appellant guilty of murder and kidnapping in the second degree and not guilty of kidnapping in the first degree. The appellant was sentenced to life imprisonment for murder and also 20 years for kidnapping in the second degree.
The appellant does not challenge the sufficiency of the evidence. Thus, the facts will be briefly stated.
On January 21, 1980, Geneva Clemons was shot and killed by the appellant in the front yard of the victim's home in Athens, Alabama. The victim's baby was then abducted. The victim's five-year-old daughter witnessed the murder and kidnapping. The appellant's daughter, Tammy Zimmerman, and the appellant's husband, Harold Schut, were also present when the incident occurred.
The victim's infant son was later found that night on the side of a road near Hartselle, Alabama. The baby had been left on the side of the road because the appellant and her husband became scared when they heard sirens shortly after leaving the scene of the murder.
 I
The appellant contends that Tammy Zimmerman should not have been allowed to testify because she was an unsworn witness, receiving psychiatric care and was on medication when she testified.
It is unclear from the record whether Zimmerman was administered the oath before she testified at trial.
However, no objection or motion, prior to or during trial, was made by defense counsel based on Tammy Zimmerman's incapacity to testify, because she was unsworn or *Page 640 
receiving psychiatric care. Furthermore, during cross-examination of Zimmerman, defense counsel thoroughly questioned her about receiving psychiatric care and about her being on medication when she testified.
 "[J]ust as a defendant may waive any impediment to a witness's capacity to testify by failing to object, Conner v. State, 52 Ala. App. 82, 87, 289 So.2d 650 (1973), cert. denied, 292 Ala. 716, 289 So.2d 656 (1974), so may he waive the failure to place a witness under oath by the failure to object."
Merton v. State, 500 So.2d 1301, 1306 (Ala.Crim.App. 1986).
The appellant's failure to object waives any contentions concerning Zimmerman's incapacity to testify because she was an unsworn witness or because she was receiving psychiatric treatment. Thus, this contention was waived.
 II
During the direct testimony of Athens Police Chief Richard Faulk, the following occurred:
 "Q. Are there consistencies, (sic) Chief Faulk, in the statement Tammy Zimmerman gave you with what you know about what happened in Athens, Alabama?
"MR. BARKSDALE: Objection, Your Honor.
"MR. MOFFATT: Objection.
"THE COURT: Sustained.
"(By Mr. Fry)
 "Q. Did you take some actions, Chief, in trying to determine whether or not the statement that you took was truthful?
"A. I did.
"MR. BARKSDALE: Objection.
"THE COURT: Actions? Did he take some action?
"MR. FRY: Yes, Your Honor.
"THE COURT: Overruled.
"(By Mr. Fry)
"Q. What actions did you take, Chief?
 "A. We made arrangements with the local police department there to have their polygraph examiner to give Tammy a polygraph examination.
 "MR. BARKSDALE: Your Honor, I'm going to move that that be excluded as not being responsive to the question and that the jury be instructed to disregard it.
 "THE COURT: All right. I'll strike it. I don't think it's an issue. The jury can disregard it." (R. 512-13).
The appellant argues that Faulk's comment about setting up a polygraph test for Tammy Zimmerman was so prejudicial that the appellant is entitled to a new trial.
When a trial judge instructs a jury to disregard improper testimony there is a presumption against error. Haywood v.State, 501 So.2d 515, 519 (Ala.Crim.App. 1986). Furthermore, the prejudicial effect of improper testimony can be cured by the trial judge's instructions to the jury to disregard the testimony at issue. Bradley v. State, 450 So.2d 173, 176
(Ala.Crim.App. 1983).
In the instant case the trial judge, upon objection by defense counsel, struck the contested statement and instructed the jury that they should disregard the statement regarding the polygraph test. Defense counsel did not request that any further instructions be given to the jury.
Therefore, any prejudicial effect of Faulk's statement concerning the polygraph test was removed by the trial judge's instructions to the jury.
 III
After the defense rested, the trial judge called Harold Schut as a court witness, outside the presence of the jury. Schut refused to testify on the ground that it might incriminate him. The trial judge then called a bench conference and informed defense counsel that his oral jury charge would include mentioning Harold Schut's having been called as a witness and having invoked his right not to testify.
The appellant maintains that the trial judge erred by instructing the jury concerning the appellant's husband's invoking his constitutional right not to testify. *Page 641 
No objection concerning this matter was made after the bench conference or after the trial judge's oral jury charge.
Failure to object to an error in the oral instructions to the jury prevents review by appellate courts. A.R.Crim.P. (Temp.) 14; Ex parte Biddie, 516 So.2d 846 (Ala. 1987).
Thus, we are precluded from reviewing this alleged error. Section 12-16-13, Code of Alabama 1975. Allen v. State,414 So.2d 989 (Ala.Crim.App. 1981), aff'd 414 So.2d 993 (Ala. 1982).
 IV
Tammy Zimmerman testified that, on another occasion, her mother, the appellant, shot and killed a woman and kidnapped her baby.
The appellant asserts that Zimmerman's testimony concerning this other criminal act should not have been admitted as evidence at this trial.
 "The general rule is that evidence of other crimes not charged in the indictment is inadmissible if its only purpose is to show the bad character, inclination or propensity of the accused to commit the type of crime for which he is being prosecuted. Mason v. State, 259 Ala. 438, 66 So.2d 557 (1953); Brasher v. State, 249 Ala. 96, 30 So.2d 31 (1947). On the other hand, if the defendant's collateral misconduct is relevant and tends to show his commission of the current offense other than by suggesting that he is more likely to be guilty because of his past misdeeds, then the evidence is admissible. C. Gamble, McElroy's Alabama Evidence § 69.01 (3d ed. 1977).
 "Many Alabama cases have adopted the following exceptions to the general rule, or tests for relevancy, to determine whether evidence of uncharged crimes is admissible:
 " '(1) Relevancy as part of res gestae. (2) Relevancy to prove identity of person or of crime. (3) Relevancy to prove scienter or guilty knowledge. (4) Relevancy to prove intent. (5) Relevancy to show motive. (6) Relevancy to prove system. (7) Relevancy to prove malice. (8) Relevancy to rebut special defenses. (9) Relevancy in various particular crimes.'
 "E.g., Bobo v. State, 56 Ala. App. 622, 626, 324 So.2d 336 (1975) (quoting Wharton's Criminal Evidence § 31).
 "Brewer v. State, 440 So.2d 1155 (Ala.Crim.App.), cert. denied, 440 So.2d 1155 (Ala. 1983)."
Primm v. State, 473 So.2d 1149, 1156 (Ala.Crim.App. 1985).
Zimmerman's testimony concerning that, on another occasion, her mother shot and killed another woman and kidnapped the woman's baby was admissible to show identity and common plan, scheme, design or system.
 "The following language concerning the identity exception is found in McElroy's, supra, at § 69.01.(8):
 " 'All evidence tending to prove a person's guilt of the now-charged crime may be said to identify him as the guilty person. However, the identity exception to the general exclusionary rule is much more specific in that it contemplates the situation where the now-charged crime was committed in a novel and peculiar manner and the state is allowed to show that the accused has committed other similar offenses, in the same novel and peculiar manner, in order to show him the perpetrator of the now-charged crime.' (Emphasis added.) (Footnote omitted.)
 "In other words, evidence of a prior crime is admissible only when the circumstances surrounding the prior crime and those surrounding the presently charged crime 'exhibit such a degree of similarity that anyone viewing the two offenses would naturally assume them to have been committed by the same person.' "
Ex parte Arthur, 472 So.2d 665, 668 (Ala. 1985) (quoting Brewerv. State, 440 So.2d 1155, 1161 (Ala.Crim.App. 1983).
 "Evidence of similar facts or other offenses to show system, scheme, plan or habit must be relevant to be admissible. Garner v. State, 269 Ala. 531, 533, 114 So.2d 385 (1959). 'Stated another way, the State is not permitted to give in *Page 642 
evidence other crimes alleged to have been committed by the defendant unless they are so connected by circumstances with the particular crime charged as that proof of one fact with its circumstances has some bearing on the issue on trial other than to show in the defendant a tendency or disposition to commit the crime with which he is charged.' Garner, 269 Ala. at 533, 114 So.2d 385.
 "Where, however, extrinsic acts are admitted to show a common plan, scheme, or design, the meaning and nature of the 'similarity' requirement is different. In this context, evidence of the 'other act' is admissible only if it is 'so linked together in point of time and circumstances with the crime charged that one cannot be shown without proving the other.' [U.S. v.] Beechum, 582 F.2d [898] at 912 n. 15 [5th Cir. 1978]; United States v. Broadway, 477 F.2d 991 (5th Cir. 1973). Courts have admitted extrinsic act evidence to show a defendant's design or plan to commit the specific
crime charged, but never to show a design or plan to commit 'crimes of the sort with which he is charged.' United States v. Goodwin, 492 F.2d 1141, 1153 (5th Cir. 1974) (emphasis in original). Thus, proof of design or plan by showing the commission of similar acts requires more than 'merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations. Thus, where the act of passing counterfeit money is conceded, and the intent alone is an issue, the fact of two previous utterings in the same month might well tend to negative intent; but where the very act of uttering is disputed — as, where the defendant claims that his identity has been mistaken — and the object is to show that he had a general system or plan of working off a quantity of counterfeit money and did carry it out in this instance, the fact of two previous utterings may be in itself of trifling and inadequate significance.
 "Goodwin, 492 F.2d at 1153 (quoting 2 J. Wigmore, Evidence § 304, at 202-03) (emphasis in original)." United States v. Dothard, 666 F.2d 498, 502 (11th Cir. 1982)."
McCall v. State, 501 So.2d 496, 503-04 (Ala.Crim.App. 1986).
Upon examination of the present crime and the collateral crime to which Zimmerman testified, we find
 "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations . . ." and they were committed in a novel and 'peculiar manner'."
Primm, 473 So.2d at 1156.
Comparing the two incidents, we find that both victims were mothers with young infants. Both of the victims were murdered by gunshots. Afterwards both of their babies were kidnapped. The most important similarity is that the appellant's daughter testified that she was present when both incidents occurred.
In the instant case the appellant's defense was that she was in the state of Washington when the murder and kidnapping occurred. Thus, the identity of the murderer was at issue.
We also conclude that the evidence of another murder by the appellant of a woman and the kidnapping of her baby was properly admitted into evidence under the identity and common scheme, plan, design or system exceptions to the general exclusionary rule.
For the reasons herein stated, we find that the appellant did receive a fair trial. Thus, this cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.
BOWEN, J., concurs in result only. *Page 643