[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 230 
 On Return to Remand
The appellant, Joseph Dewey Akin, a nurse employed by Cooper Green Hospital, was convicted of murdering Robert Price by administering a lethal dose of the drug lidocaine into his body. See § 13A-6-2, Ala. Code 1975. Akin was sentenced to life imprisonment.
On original submission, this court remanded this case to the trial court for consideration of the issue whether the appellant had established a prima facie case of discrimination in jury selection, with instructions that an evidentiary hearing be held to evaluate the State's exercise of its strikes against white veniremembers. Akin v. State,668 So.2d 74 (Al. Crim. App. 1995). In an October 13, 1995, hearing, the trial court ruled that there was no evidence to support a finding of *Page 231 
racial discrimination in the jury selection. We have reviewed the transcript from the hearing and have found no error in the trial court's findings. Therefore, we will now address the remaining issues on appeal.
 I.
The appellant argues that the trial court erred in denying his challenge for cause of a juror, M.M. We agree. During questioning in chambers, M.M. clearly expressed a fixed opinion of the case based on pretrial publicity. The record states:
 "Mr. Short [defense counsel]: You indicated, I believe, that you have seen or heard on television or radio a lot of facts about this case.
 "Juror [M.M.]: Well, just have read the paper and seen what was on T.V.
 "Mr. Short: Based on what you have read and heard, have you formed an opinion in this case?
 "Juror [M.M.]: Well, of course, I don't know if it's right, but I would say I have.
 "Mr. Short: Do you think the fact that you have formed an opinion based on what you have read and heard about this case would interfere with your ability to render a true and fair verdict based on the law and the evidence submitted in this courtroom?
 "Juror [M.M.]: I will just be truthful. I know — I've read it in the beginning. I haven't read it lately. I more or less would have an opinion like from the beginning and I guess I kept it. In fact, it's ironic, yesterday I said I didn't realize I would be here today and I said I don't want to be on that jury. I'm just telling it as it is.
 "Mr. Short: That's what I want you to do. Do you feel like, then, you could not put aside your feelings and render a verdict based exclusively on the evidence that you hear in this courtroom and the law that Judge Pearson tells you in this case?
 "Juror (M.M.]: Probably not. Not being I have already made up — even if I heard this and I was thinking this other way — I'm just being truthful.
 "Mr. Short: You do not feel that you could render a verdict exclusively on the evidence that you hear in this courtroom and the law that Judge Pearson gives you?
 "Juror [M.M.): I realize Judge Pearson is 100% right. Am I wrong in having done that?
"The Court: Not at all.
 "Mr. Short: You are correct to state your true feelings.
 "Juror [M.M.]: I have read the paper and I know how I feel about it. I wouldn't want somebody to go to jail or the other way. I don't think I would care to be on that particular case.
 "Mr. Short: I believe you indicated that you had rather not sit on this case.
 "Juror [M.M.]: Well, if having an opinion one way or the other — I know it's good for one or the other. But, no.
 "Mr. Short: Have you made your mind up about this case?
 "Juror [M.M.]: More or less. I'm not saying it's right.
 "The Court: If you were sitting out there as a defendant would you want you to judge yourself?
 "Juror [M.M.]: That's exactly what I'm saying. No."
(R. 382-86.)
Section 12-16-150, Code of Alabama 1975, provides:
 " It is good ground for challenge of a juror by either party:
". . . .
 "(7) That he has a fixed opinion as to the guilt or innocence of the defendant which would bias his verdict."
"The test to be applied in determining whether a juror should be removed for cause is whether the juror can eliminate the influence of his previous feelings and render a verdict according to the evidence." Rowell v. State,570 So.2d 848, 855 (Ala.Crim.App. 1990). "Proof that the juror has a biased or fixed opinion is insufficient. There must be proof that the opinion was 'so fixed that it would bias the verdict of the juror.' " Clark v. State, 443 So.2d 1287, 1289
(Ala.Cr.App. 1983). *Page 232 
M.M. stated that based on what she had read in the newspaper and seen on television, she had formed an opinion in the case. Furthermore, when asked if she could put her opinion aside and render a verdict based on the evidence, she responded, "Probably not." M.M. further indicated her bias against the appellant in response to one of counsel's questions. When M.M. was asked whether if she were the defendant would she want herself to be on the jury, she responded, "That's exactly what I'm saying. No." (R. 386.)
M.M.'s indication that she had "100%" faith in Judge Pearson does not negate her bias and justify the Court's failure to grant the appellant's challenge for cause. Based on these findings, the trial court erred in failing to grant the appellant's challenge for cause against M.M.
Although we are reversing the trial court's judgment based on this issue, we will address the remaining issues raised by the appellant because these issues may be raised in the appellant's new trial.
 II.
The appellant contends that the trial court erred in ordering defense counsel to provide to the State a letter report prepared by the appellant's expert witness, a physician. Dr. Benowitz prepared a report based on a review of the victim's medical records. When Dr. Benowitz testified, the State requested that defense counsel provide it with a copy of his report. Defense counsel did not provide a copy and argued the report was not discoverable. The Court ordered defense counsel to produce the report. (R. 1692.)
Ala.R.Crim.P. 16.2(c) provides:
 "(c) Reports of Examinations and Tests. Upon written request of the state/municipality, the defendant shall, within fourteen (14) days after the request has been filed in court as required by Rule 16.4(c), or within such shorter or longer period as may be ordered by the court, on motion, for good cause shown, permit the state/municipality to inspect and to copy any result or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, which are within the possession or control of the defendant and which the defendant intends to introduce in evidence at the trial or which were prepared by a witness whom the defendant intends to call at the trial, if the results or reports relate to the witness's testimony."
(Emphasis added.)
The State's theory of the case was that the appellant, a nurse at Cooper Green Hospital, injected Robert Price with a lethal does of lidocaine; Price required emergency treatment and subsequently died as a result of the injection. The record reveals that Dr. Benowitz testified that the lethal dose of lidocaine was, in his opinion, administered by a member of the hospital staff accidentally during the emergency treatment of Price. (R. 1677.) The report related directly to Dr. Benowitz's testimony at trial. (R. 1685.) Therefore, the trial judge properly ordered defense counsel to provide a copy of the report to the State.
 III.
The appellant contends that the trial court erred when it overruled defense counsel's objection, made on chain of custody grounds, to the testimony of the coroner, Dr. Brissie, concerning blood and tissue samples taken from Price's body during an autopsy.
The record reveals that the victim's body was autopsied first by a pathologist, Dr. Michaelis, who recorded the weight of the victim's organs. (R. 1324.) The following day, Dr. Robert Brissie, medical examiner for Jefferson County, conducted a second autopsy. (R. 1321.) Dr. Brissie testified that during his examination of the victim's body, he found a plastic bag inside the victim's body cavity which had been sewn shut. (R. 1323.) The victim's organs were in the plastic bag and had been partially dissected. (R. 1342.) Dr. Brissie said that he removed the bag from the body for re-autopsy. (R. 1342.) Dr. Brissie testified that he removed the heart, lungs, adrenal glands, pancreas, kidney, stomach, intestines, and esophagus from the bag. These organs had been removed during the previous autopsy. (R. 1346-1348.) Dr. Brissie further testified that there were *Page 233 
some variations in the weight of the organs between the two autopsy reports. (R. 1325.)
The appellant argues that because the second autopsy resulted in different organ weights and differences in blood and tissue samples, it is not certain that the organs to which Dr. Brissie's testimony was directed were the victim's organs. Before trial, defense counsel made a motion seeking to exclude Dr. Brissie's testimony on a chain of custody ground. The trial court denied the motion. (R. 191-217, 1322.) Defense counsel objected at trial based on a chain of custody ground. The court overruled the objection. (R. 1322)
This Court has stated, "[I]t is not necessary to prove to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from, the object at the commencement of the chain."Grice v. State, 481 So.2d 449, 451 (Ala.Crim.App. 1985). "Evidence has been held correctly admitted even when the chain of custody has a weak or missing link." Shute v. State,469 So.2d 670, 674 (Ala.Crim.App. 1984). Even if there is a weak link in this case, "where a weak link in the chain of custody is said to exist, it presents a question of credit and weight to be afforded the evidence, rather than the admissibility of the item." Grice, 481 So.2d at 451 (Ala.Crim.App. 1985).
After the initial autopsy, Price's body was taken to a funeral home and then returned to the coroner's office for a second autopsy. (R. 1318.) Dr. Brissie, who performed the second autopsy, testified at great length regarding his safeguarding and handling of each sample taken from Price's body and his disposition of those items during the autopsy. (R. 1321-23.) The record reveals no evidence that the body had been tampered with in any way. To defeat a chain of custody challenge, the State need only prove to a reasonable probability that the object is in the same condition as, and not substantially different from, its condition at the beginning of the chain. Sommer v. State, 489 So.2d 643, 645
(Ala.Cr.App. 1986). In this case, the State stipulated that some of the organs were assigned different weights in the two autopsies. (R. 1326.) However, the differences in the weights of the organs raises only a remote possibility that the evidence was harmed or tampered with. Furthermore, the admission of Dr. Brissie's testimony did not prejudice the substantial rights of the appellant, therefore, the error, if any, was harmless. The trial court properly admitted the testimony into evidence and the record reveals no abuse of discretion regarding the court's decision.
 IV.
The appellant contends that the trial court erred in refusing to give the written charges he requested on criminally negligent homicide.
The appellant was charged with murder. The trial judge gave an instruction defining murder under § 13A-6-2, Ala. Code 1975, and a charge defining manslaughter under § 13A-6-3(a)(1), Ala. Code 1975. However, the trial court refused the appellant's request for a charge on criminally negligent homicide under §13A-6-4. (R. 1565.)
Section 13A-6-4 defines "criminally negligent homicide" as follows: "(a) A person commits the crime of criminally negligent homicide if he causes the death of another person by criminal negligence." Section 13A-2-2(4) defines "criminal negligence" as follows: "A person acts with criminal negligence when he fails to perceive a substantial and unjustifiable risk that the result will occur."
"A killing is not accidental when the act causing death is done intentionally." Phelps v. State, 435 So.2d 158, 165
(Ala.Crim.App. 1983). "An instruction on criminally negligent homicide is proper only where the victim's death was caused by the defendants inadvertent creation and subsequent disregard of a risk of harm of which he should have been aware, but which in fact he was not aware of." Wiggins v. State, 491 So.2d 1046,1048 (Ala.Crim.App. 1986). The submission to the jury of the lesser included offense of manslaughter does not necessarily entitle a defendant to a jury charge on criminally negligent homicide as a lesser included offense. Phelps v. State,435 So.2d 158, 166 (Ala.Cr.App. 1983). "An accused is not entitled *Page 234 
to have the jury charged on a lesser included offense unless there is a reasonable theory from the evidence to support the lesser offense." Nelson v. State, 452 So.2d 1367, 1371
(Ala.Crim.App. 1984).
The question before this court is whether there was any evidence presented at trial that would support a charge on criminally negligent homicide. In other words, was there any evidence presented that the appellant failed to perceive that the victim might die as a result of his action? We conclude that there was not. Evidence presented at trial showed that the appellant intentionally injected the victim with an overdose of lidocaine with the intent to kill him or to induce in him a "flat line" that would permit the appellant to resuscitate him and act as a hero. The State also presented evidence that the appellant had in the past created similar emergency situations and then "saved" the patient.
Because evidence was presented from which the jury might have found that the appellant was aware of the consequences of his actions, it was not error to refuse to give the requested jury charge.
 V.
The appellant contends that the trial court erred in allowing the testimony of Jacqueline Taylor, Lagretta Johnson, and Naomi Dixon regarding three similar acts allegedly committed by the appellant.
The trial court allowed Taylor, Johnson, and Dixon to testify regarding three similar acts allegedly committed by the appellant. Specifically, the witnesses testified about the appellant's involvement in three "code blue" emergencies at Cooper Green Hospital on the day Price died.
First, the appellant argues that the trial court erred in allowing into evidence the testimony of Jacqueline Taylor. A review of the record reveals that Taylor testified at trial regarding the code blue emergency involving Odessa Barbear, a patient in room 760. Barbear's code blue occurred several hours after the code blue occurred on Robert Price, who was a patient in room 756. Taylor, a nurse at Cooper Green, testified that the appellant was present when Odessa Bar-bear's heart rate dropped rapidly and she required emergency treatment. (R. 1125.)
The appellant likewise argues that the testimony of State's witnesses Lagretta Johnson and Naomi Dixon should not have been admitted. Johnson was a nurse at Cooper Green assigned to Barbear. (R. 1106.) Johnson witnessed Barbear's code blue on the day of Price's death. Naomi Dixon, a nurse, witnessed the code blue on John Lashore, a patient on in room 761. The testimony of these witnesses was introduced over an objection by the appellant that it constituted evidence of collateral crimes. (R. 1050, 1109, 1294.) The Court overruled the objection. (R. 1123.)
 " 'The general rule is that evidence of other crimes not charged in the indictment is inadmissible if its only purpose is to show the bad character, inclination or propensity of the accused to commit the type of crime for which he is being prosecuted. On the other hand, if the defendant's collateral misconduct is relevant and tends to show his commission of the current offense other than by suggesting that he is more likely to be guilty because of his past misdeeds, then the evidence is admissible. C. Gamble, McElroy's Alabama Evidence § 69.01 (3d ed. 1977)' "
Schut v. State, 548 So.2d 638, 641 (Ala.Cr.App. 1989), quotingPrimm v. State, 473 So.2d 1149, 1156 (Ala.Crim.App. 1985) (citation omitted). "[E]vidence of collateral offenses may be admissible under certain exceptions to the exclusionary rule or for 'other purposes' than to prove the accused's guilt. These exceptions or other purposes include motive, intent, identity, or common plan, design, or scheme. " Williamson v. State,629 So.2d 777, 780 (Ala.Crim.App. 1993).
"The decision whether to allow or not to allow evidence of collateral crimes or acts as part of the State's case-in-chief rests within the sound discretion of the trial judge." Blanco v. State, 515 So.2d 115, 120 (Ala.Cr.App. 1987). "Evidence of similar facts or other offenses to show system, scheme, plan or habit must be relevant to be *Page 235 
admissible. " Schut v. State, 548 So.2d 638, 641
(Ala.Cr.App. 1989).
The acts at issue (the other code blues that occurred on the day of Price's death) have a logical connection to this case and, in fact, reveal a scheme on the appellant's part. The testimony of Taylor, Johnson, and Dixon regarding similar acts was admissible to show a common plan on the part of the appellant.
The appellant claims that there was not sufficient evidence to prove that any criminal act occurred regarding Odessa Barbear. However, the evidence was probative to show a pattern, design, or scheme on the part of the appellant and was "sufficient to allow the jury to find by a preponderance of the evidence that the act occurred and that the [appellant] committed the act." Ex parte Hinton, 548 So.2d 562,567 (Ala.), cert. denied, 493 U.S. 969, 110 S.Ct. 419,107 L.Ed.2d 383 (1989). In Huddleston v. United States,485 U.S. 681, 687, 108 S.Ct. 1496, 1500, 99 L.Ed.2d 771 (1988), the United States Supreme Court "expressly declined to require a level of proof of at least a preponderance of the evidence before the trial court could allow evidence of an extrinsic act to go before the jury." Ex parte Hinton, 548 So.2d at 567. "Rather, 'similar' acts evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." Huddleston,485 U.S. at 685, 108 S.Ct. at 1499. Such evidence was present here.
The evidence offered by the State of the collateral acts was offered to prove a plan, design, or scheme on the part of the appellant; the trial judge did not err in allowing the testimony.
 VI.
The appellant contends that the trial court erred in limiting defense counsel's cross-examination of Dr. Robert Brissie. During cross-examination, defense counsel questioned Dr. Brissie regarding the defense's theory that the lidocaine that killed Robert Price was accidentally administered during the code blue. (R. 1438.) However, the court would not allow Dr. Brissie to give his opinion as to whether lidocaine was missing from Robert Price's crash cart because, at the time of cross-examination, it had not been established that any lidocaine was in fact missing. (R. 1426-27, 1419-39.)
The record reveals the following:
 " MR. SHORT [defense counsel]: Did the knowledge that -at the time that you were forming your opinion would the knowledge that a gram of lidocaine was missing from Mr. Price's code cart have affected your opinion?
"THE COURT: Hold it just a minute.
"MR. BROWN [prosecution counsel]: I don't object.
"THE COURT: I know that. But I'm going to.
"(Jury out.)
"(Witness out.)
 "THE COURT: Refresh me, first of all, before I go on to what I want to say. You've got testimony about lidocaine missing?
 "MR. SHORT: Yes, sir. I have the list that was provided to Ms. Vandiver by Mr. Day, the director of pharmacy, on March 29, of the items that were missing from the code cart used on Mr. Price that includes a gram of lidocaine.
 "THE COURT: If you eventually travel down that road — that's what they're hauling. The theory of their whole case is that your client took some lidocaine and gave it to somebody. You are aware of that, aren't you?"
After a discussion with defense counsel, the court instructed defense counsel to rephrase his question. (R. 1431-32.) The court then recalled the witness to the stand and allowed defense counsel to continue his cross-examination.
 "MR. SHORT: I want to rephrase the question that I asked. Would the fact that lidocaine was determined to be missing from the code cart, Mr. Price's cart, on March 27, 1991, . . . would that affect your opinion that lidocaine was administered in a large dose prior to the code? *Page 236 
"DR. BRISSIE: No, it would not."
(R. 1419-39.)
"The scope of cross-examination must of necessity be committed to the discretion of the trial court and in the absence of abuse of discretion, the trial court's ruling will not be reversed." Lomax v. Speed, 507 So.2d 455, 458
(Ala. 1987). The record reveals that the trial court allowed defense counsel sufficient opportunity to cross-examine Dr. Brissie. (R. 1419-39.) However, the trial court did not allow defense counsel to ask a question that assumed a disputed fact when that fact had not been established. Defense counsel was trying to elicit testimony from the witness that required speculation about how the lidocaine got into Price's system. (R. 1429-30.) "The right to a thorough and sifting cross-examination of a witness does not extend to matters that are collateral or immaterial and the trial judge is within his discretion in limiting questions which are of that nature."Burton v. State, 487 So.2d 951, 956 (Ala.Crim.App. 1984). Here, the question about whether the lidocaine was accidentally administered during the code blue was a question for the jurors to answer based upon the evidence. The trial judge did not abuse his discretion in so limiting defense counsel's cross-examination.
 VII.
The appellant argues that the trial court violated his Sixth Amendment right to confront the witness against him when he did not allow the State's witness to respond to the appellant's question concerning the "Do Not Resuscitate" "DNR" policy of Cooper Green Hospital.
At trial, defense counsel questioned Dr. Julia Larkin, an intern who was treating Price at the time of his death. Price died at 4:35 p.m. The record shows the following:
 "MR. SHORT [defense attorney]: Did you ever call for a cardiologist consult at any time from 1:50 to 4:35?
"DR. LARKIN: No, sir.
 "MR. SHORT: You never did call a cardiologist or attempt to get some understanding of what was happening to the heart rhythm?
 "THE COURT: Wait a minute. Let me send the jury out.
". . .
"THE COURT: What are you trying to establish?
"MR. SHORT: What she did.
"THE COURT: She told you."
(R. 725.)
After the jury was removed from the courtroom, the court discussed with defense counsel the necessity for pursuing the testimony. Defense counsel indicated that he was trying to elicit testimony from the intern about her decision to resuscitate Price. The appellant argues that this examination was critical to the issue of the cause of death. The court limited defense counsel's examination because he was being repetitive. (R. 725-31.) However, the court allowed defense counsel to present through an expert witness, Dr. Neal Benowitz, the defense's theory that had the lidocaine been administered in one injection a resuscitation at 4:35 p.m. should have been easy because no heart problem would have been caused by the lidocaine by that time. (R. 728-29.)
"The right of cross-examination, thorough and sifting, belongs to every party as to the witnesses called against him." Buckelew v. State, 48 Ala. App. 411, 415, 265 So.2d 195,198-99 (Ala.Crim.App.), cert. denied., 409 U.S. 1060,93 S.Ct. 558, 34 L.Ed.2d 512 (1972). "A trial is not meant to be an eternal phenomenon." Id., 48 Ala. at 415, 265 So.2d at 199. "The undue consumption of time in the trial of causes, and the avoidance of multiplied collateral issues . . . are matters necessarily committed in the first instance to the wise discretion of a trial judge." Drummond v. Drummond, 212 Ala. 242,244, 102 So. 112 (1924); Sowell v. State, 30 Ala. App. 18,199 So. 900 (1941).
The area into which defense counsel was attempting to delve was speculative and irrelevant. The trial court pointed out to counsel that the proper manner to put this evidence before the jury was through the defense's own witness. It is well-settled law in this State that the scope of cross-examination is left strictly to the sound discretion of the trial court. Noble v. State, 253 Ala. 519, *Page 237 45 So.2d 857 (1950). We find no abuse of discretion by the trial judge.
 VIII.
The appellant argues that the trial court erred in limiting defense counsel's cross-examination of State's witness Diane Vandiver. We disagree.
Defense counsel's cross-examination of Diane Vandiver, director of nursing at Cooper Green Hospital, concerned her knowledge of a civil action filed by Price's family against Cooper Green. Defense counsel asked the following:
 "MR. SHORT [defense counsel]: Ms. Vandiver, are you aware that the family of Robert Price has filed a lawsuit against Cooper Green Hospital in this cause?
"Vandiver: Yes.
 "MR. SHORT: Are you aware that that lawsuit involves the administration of lidocaine?
"VANDIVER: I have not seen —
"THE COURT: Hold just a minute.
 "MR. BROWN [prosecutor]: I object to it and I move to exclude it. I've never seen this lawsuit.
"THE COURT: Have you ever seen this lawsuit?
 "VANDIVER: That's what I said. I've never seen it.
 "THE COURT: Disregard anything. You may consider the fact that a lawsuit has been filed. I think that's been testified to. The lawsuit has been filed. You may consider that, but what it contains other than who — is it a suit against, Cooper Green?
 "MR. SHORT: Against Cooper Green, Augmentation and Mr. Akin.
 "THE COURT: You may consider that, and only consider it insofar as it may affect a particular witness's testimony. His motive. Go ahead."
(R. 770-72.)
 " 'The case law of this state has consistently held the institution of a civil suit arising out of the same facts as a criminal prosecution to be within the permissible scope ofcross examination to show bias on the part of the witness. This rule is augmented by the public policy of this state as codified in Section 12-21-137, Code 1975, which mandates the right of every party to a "thorough and sifting"cross-examination of the opponent's witnesses.
 " 'The general rule, from which the more narrow rule here under consideration evolved, is stated in Green v. State, 258 Ala. 471, 64 So.2d 84
(1953):
 " ' "It is always competent on cross examination to make such interrogation of a witness as would tend to test his interest, bias or prejudice or to illustrate or impeach the accuracy of his testimony."'"
Reeves v. State, 432 So.2d 543, 545-46 (Ala.Cr.App. 1983).
The trial court gave defense counsel an opportunity to question Vandiver. The court gave a limiting instruction to the effect that the jury could consider the fact that a civil action had been filed against the hospital, but that the jury could consider that fact only insofar as it affected a particular witness's testimony and motives. (R. 771-72.) Defense counsel failed to make an offer of proof demonstrating what testimony he hoped to elicit from the witness and his reasons for questioning the witness regarding this matter. The trial court did nor err in so limiting defense counsel's cross-examination of Vandiver.
 IX.
The appellant argues that the court erred in denying him a free transcript on appeal in this cause. Specifically, the appellant argues that Mr. Short was representing him pro bono on this case and that he should have been allowed to retain Mr. Short on appeal rather than having a new attorney appointed by the trial court. However, this contention is without merit.
This court has held that an indigent defendant also has a right to a free transcript on appeal. Hubbard v. State,382 So.2d 577 (Ala.Cr.App. 1979). However, it is clear from the record that defense counsel agreed to represent the appellant pro bono on appeal and that he agreed to pay for the transcript. *Page 238 
(R. 2139, 2143.) Further, defense counsel states in his reply brief to this court that the appellant clearly had counsel and the trial court was under no duty to appoint counsel, nor had the appellant filed any motion requesting the court to appoint counsel on appeal. Therefore, because defense counsel agreed to represent the appellant pro bono and to pay for the transcript, we find that the appellant's constitutional rights were not violated.
For the reasons stated above, the judgment of the trial court is reversed and the case remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur.